UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

CASE NO: 1:21-CV-539

| | |
|---|---|
| RAYMOND NARDO, individually and on behalf of all others similarly situated, | CLASS ACTION |
| *Plaintiff*, | JURY TRIAL DEMANDED |
| vs. | |
| PHE, INC. d/b/a ADAM AND EVE, | |
| *Defendant*. | |

## CLASS ACTION COMPLAINT

Plaintiff Raymond Nardo brings this class action against Defendant PHE, Inc. d/b/a Adam and Eve ("Defendant") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* (the "TCPA").

2. Defendant is the largest e-commerce distributor of erotica in the United States.

3. Plaintiff has never purchased anything from Defendant, conducted business with Defendant, or visited Defendant's website.

4. Defendant uses an automatic telephone dialing system to send mass automated marketing text messages to individuals' cellular phone numbers without first obtaining the required express written consent.

5. Defendant also violates the TCPA's Do Not Call ("DNC") regulations by placing solicitation calls to individuals who have registered their telephone numbers on the national DNC registry and by continuing to place calls after individuals request to opt out of Defendant's messaging.

6. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of themselves and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA").

8. Defendant is subject to personal jurisdiction in North Carolina because its primary place of business is in North Carolina.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

10. Plaintiff is a natural person who, at all times relevant to this action, was a citizen of and domiciled in Mineola, New York.

11. Defendant is a North Carolina corporation with its principal place of business in Orange County, North Carolina. Defendant directs, markets, and provides its business activities throughout the state of North Carolina.

12. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

13. Plaintiff has never purchased an item from Defendant, inquired about Defendant's products, provided his contact information to Defendant, or visited Defendant's website.

14. Despite this, on May 9, 2021, Defendant, or parties under Defendant's direction, used an ATDS to cause the following automated telemarketing text messages to be transmitted to Plaintiff's cellular telephone number ending in 9996 (herein, the "9996 Number"):



3

15. At the time Plaintiff received these calls and messages, Plaintiff was the subscriber and/or sole user of the 9996 Number.

16. Plaintiff primarily uses the 9996 Number as a personal phone.

17. The 9996 Number has been registered with the National Do Not Call Registry since February 20, 2007.

18. Defendant's text messages constitute telemarketing, advertising, or solicitations because they promote Defendant's business, goods and services.

19. Plaintiff has never inquired about or purchased any of Defendant's goods or services.

20. At no point in time did Plaintiff provide Defendant (1) with his contact information, (2) with the 9996 Number, (3) with his prior express consent to be contacted with text messages sent using an ATDS, or (4) with his prior express written consent to be contacted by telemarketing text messages sent using an ATDS.

21. As demonstrated above, Plaintiff requested multiple times that Defendant stop contacting the 9996 Number using the "stop" key word provided in the text messages.

22. Notwithstanding, Plaintiff continued to receive unsolicited text messages from Defendant.

23. Indeed, as recently as June 17th, Defendant sent another marketing solicitation text message to the 9996 Number, as shown below:



24. The failure to stop calling is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

25. An ATDS was used to send the text messages to the 9996 Number.

26. The impersonal and generic nature of Defendant's text messages demonstrates that Defendant utilized an ATDS in transmitting the messages. The text messages include no personal identifiers and are formatted in a generic manner.

27. The text messages also include instructions on how to respond in manner that the ATDS will understand. As an example, the text message contains the key words "help" and "stop" as responses.

28. The number used by Defendant to send Plaintiff the text messages was the short-code 33233.

5

29. A short code is a standard 5-digit code that enabled Defendant to send SMS text messages en masse, while deceiving recipients that the message was personalized and sent from a telephone number operated by an individual.

30. Upon information and belief, Defendant caused similar text messages to be sent to individuals residing within this judicial district.

31. Upon information and belief, to place the text messages, Defendant used a software suite (the "Platform") that permitted Defendant to transmit bulk SMS text messages. Systems like the Platform utilized by Defendant have the capacity to transmit thousands of texts messages per second and are technologically more sophisticated in their availability to transmit messages than a traditional smartphone.

32. The Platform utilized by Defendant is an ATDS because it has the capacity to (1) store telephone numbers; (2) using a random or sequential number generator.

33. The Platform utilized by Defendant is also an ATDS because it has the capacity to (1) produce telephone numbers; (2) using a random or sequential number generator.

34. For example, the Platform has the capacity to indefinitely store telephone numbers within a computer database for subsequent dialing.

35. Further, the Platform has the capacity to utilize a random and sequential number generator in the storage of those numbers, and does in fact utilize said number generator for a variety of functions including, but not limited to, the selection and creation of SMS packets containing the target telephone numbers to be dialed by the Platform, as well as the sequential and/or random selection of telephone numbers to be dialed from a preselected stored list of numbers.

36. A packet in the context of SMS transmission is an envelope of data that contains various instructions and content, including the target cellular telephone number to be dialed, the sequence in which to dial each number, and wording of the message. The following is an example of a typical SMS packet:

> SubmitReq:StatusReportReq=true,Destination=0011166500313,Sequence=35722139,Originator=91157,OriginatorType=3,Body=3:2e:0a11:2f14:2f11:0aDEBIT(p)$1:2e47:0aCHKCARDFOUTSETCROBERTIDUS:0aFornexttransaction:3aReplyN:0aForprevious:3aReplyP,BillingRef=,ClientRef=41883049-1,ProfileId=31174,Operator=31003,Tariff=0,Tag-Program=stdrt,TagChClientID=31174,TagChUsername=corvette_31174,ServiceId=51437,Interface=xml,

37. In the context of SMS packet creation, the Platform utilizes a random and/or sequential number generator to pull and generate telephone numbers from a list of numbers and transfer those numbers to a separate list for the creation of the packets, and ultimately placement into each independent SMS packet.

38. In the context of dialing the numbers, the Platform utilizes a random and/or sequential number generator to pick and designate the sequence in which to dial the telephone numbers. The Platform independently selects the rate and time at which to dial each telephone numbers and may temporarily store the packets in a queue when the volume exceeds capacity to deliver them.

39. The Platform also has the capacity to use its random and/or sequential number generator to generate random or sequential identification numbers that it assigns to each SMS packet.

40. Defendant's unsolicited text message caused Plaintiff additional harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's call also inconvenienced Plaintiff and caused disruption to his daily life.

7

Case 1:21-cv-00539-CCE-JLW   Document 1   Filed 06/30/21   Page 7 of 17

## CLASS ALLEGATIONS

**PROPOSED CLASS**

41. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

42. Plaintiff brings this case on behalf of the Class defined as follows:

**ATDS CLASS:** All persons in the United States who from four years prior to the filing of this action: (1) Defendant, or anyone on Defendant's behalf, (2) transmitted a text message; (3) using the same type of equipment used to text message Plaintiff; (4) to said person's cellular telephone number; (5) where the purpose of the text message was to encourage the purchase or rental of, or investment in, Defendant's property, goods, or services.

**DO NOT CALL CLASS:** All persons in the United States who from four years prior to the filing of this action (1) Defendant, or anyone on Defendant's behalf, (2) placed more than one text message call within any 12-month period; (3) where the person's telephone number that had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of, or investment in, Defendant's property, goods, or services; (5) who did not purchase or transact business with Defendant during the eighteen (18) months immediately preceding the date of the first message; and (6) who did not contact Defendant during the three (3) months immediately preceding the date of the first message with an inquiry about a product, good, or service offered by Defendant.

**Internal Do Not Call Class**: All persons within the United States who, within the four years prior to the filing of this Complaint, (1) Defendant, or anyone on Defendant's behalf, (2) placed a text message call, (3) for the purpose of encouraging the purchase or rental of, or investment in, Defendant's property, goods, or services, (4) to said person's residential telephone number, (5) after the person had requested to Defendant to not receive any more telephonic communications from Defendant.

43. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

44. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

45. Upon information and belief, Defendant has placed calls to telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent and/or in violation of the national DNC. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

46. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

47. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

   a) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

   b) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

   c) Whether Defendant's conduct was knowing and willful;

   d) Whether Defendant initiated telemarketing calls to telephone numbers listed on the National Do Not Call Registry;

   e) Whether Defendant initiated telemarketing calls to telephone numbers who requested to not receive such calls;

   f) Whether Defendant is liable for damages, and the amount of such damages; and

   g) Whether Defendant should be enjoined from such conduct in the future.

48. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

49. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

50. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

51. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

52. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another

may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200
**(On Behalf of Plaintiff and the ATDS Class)**

53. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

54. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

55. It is also a violation of the TCPA regulations promulgated by the FCC to "initiate any telephone call…using an automatic telephone dialing system…To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 C.F.R. § 64.1200(a)(1)(iii).

56. Additionally, it is a violation of the TCPA regulations promulgated by the FCC to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system…other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made  …" 47 C.F.R. § 64.1200(a)(2).

57. The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §227(a)(1).

58. Defendant used an ATDS to make non-emergency telemarketing calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

59. These calls were made without regard to whether or not Defendant had first obtained express written consent from the called party to make such calls.

60. In fact, Defendant did not have prior express written consent to call the telephones of Plaintiff and the other members of the putative Class when its calls were made.

61. Defendant has, therefore, violated § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a) of the TCPA by using an ATDS to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

62. Defendant knew that it did not have prior express consent to make these calls and knew, or should have known, that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

63. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the members of the Class are also entitled to an injunction against future calls.

## COUNT III

### Violations of 47 U.S.C. § 227 and 47 C.F.R. § 64.1200

**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

64. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-51 as if fully set forth herein.

65. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber

12

Case 1:21-cv-00539-CCE-JLW   Document 1   Filed 06/30/21   Page 12 of 17

who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

66. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

67. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

68. Any "person who has received more than one telephone call within any 12- month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

69. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

70. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages

and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

71. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## COUNT III

### Violations of 47 U.S.C. § 227 and 47 C.F.R. § 64.1200

### (On Behalf of Plaintiff and the Internal Do Not Call Class)

72. Plaintiff re-alleges and incorporates paragraphs 1-51 as if fully set forth herein.

73. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

74. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

75. Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive future calls on their cellular telephone numbers from Defendant.

76. Defendant failed to honor Plaintiff and the Internal Do Not Call Class members' opt-out requests.

14

77. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

78. Thus, Defendant has violated 47 C.F.R. § 64.1200(d).

79. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

80. As a result of Defendant's knowing or willful conduct, Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages per violation.

81. Plaintiff and the Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order declaring that Defendant's actions, as set out above, violate the TCPA;

b) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

c) An injunction prohibiting Defendant from initiating calls to telephone numbers listed on the National Do Not Call Registry, requiring Defendant to obtain prior express written consent prior to placing telemarketing calls using an ATDS,

15

Case 1:21-cv-00539-CCE-JLW   Document 1   Filed 06/30/21   Page 15 of 17

mandating Defendant to honor opt our requests and maintain an internal Do Not Call list.

d) As a result of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq*., and 47 C.F.R. § 64.1200, Plaintiff seeks for himself and each member of the Class $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3).

e) As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §§ 227, *et seq*., and 47 C.F.R. § 64.1200, Plaintiff seeks for himself and each member of the Class treble damages, as provided by statute, up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 227(b)(3).

f) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the calls as alleged herein.

Dated: June 30, 2021

| | |
|---|---|
| */s/ David M. Wilkerson*<br>DAVID M. WILKERSON<br>NC State Bar No. 35742<br>The Van Winkle Law Firm<br>11 N. Market Street<br>Asheville, North Carolina 28801<br>(828)258-299 (phone)<br>(828)257-2767 (fax)<br>dwilkerson@vwlawfirm.com | Ignacio Hiraldo, Esq.<br>FL State Bar No. 56031<br>DC State Bar No. 485610<br>**IJH Law**<br>1200 Brickell Ave. Suite 1950<br>Miami, FL 33131<br>E: IJhiraldo@IJhlaw.com<br>T: 786-496-4469<br>*Pro Hac Vice to be filed* |

*Attorneys for Plaintiff and the Proposed Class*